UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White
Argued by videoconference


SCOTT BRIAN DUNN

                                    MEMORANDUM OPINION* BY
v.        Record No. 0358-22-3        JUDGE CLIFFORD L. ATHEY, JR.
                                      FEBRUARY 7, 2023

CITYSCAPE, LLC AND
 FLAGSHIP CITY INSURANCE CO.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Hannah Bowie (Brandon S. Osterbind; Kelly A. Osterbind;
Osterbind Law, PLLC, on briefs), for appellant.

Richard D. Lucas (Lucas & Kite, PLC, on brief), for appellees.


Scott Brian Dunn ("Dunn") appeals a decision of the Workers' Compensation Commission

denying his claim seeking a closed period of temporary total disability benefits, as well as medical

benefits, related to a right hip injury that occurred at work on July 22, 2019. Dunn argues that the

Commission erred by finding he was an independent contractor and Cityscape, LLC ("Cityscape")

"did not exercise sufficient control over [him] to render him an employee." We find no error and

affirm the decision of the Commission.

## I. BACKGROUND

Beginning in 2008, Dunn operated his own unincorporated business, specializing in

cabinet, door, and tile installation, woodworking, and trim. Dunn's business had a tax

identification number, a business license, business cards, an email address, and a presence on

Facebook and Angie's List. Dunn also posted signs advertising his business on at least two job

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sites. The work vehicle Dunn operated was licensed and insured by his business. At the time of the work accident, Dunn's business had workers' compensation insurance. Dunn testified that his business's workers' compensation insurance policy was a "ghost policy," meaning that the policy covered his employees, but not himself. Dunn obtained the policy to produce evidence of coverage on contracted jobs.

Cityscape is "a general contractor . . . [specializing in] historical renovation." In April 2019, Danny George ("George") hired Dunn to work at Cityscape's job site in Lynchburg.[1] George had hired Dunn to work on a prior Cityscape project, where Dunn had "put in all the cabinets, door closers, anything from scrubbing floors to get paint off, to caulking and whatever else they asked me that I thought was okay." George was employed by Adaptive Services, a subcontractor for Cityscape, and served as their head project manager for the Lynchburg project. Dunn was also supervised by Scott Boswell ("Boswell") who was an employee of Cityscape with the title of "job site superintendent." In addition, Manny McMillan, who was "a direct hire by Cityscape," worked "side by side with . . . Dunn" as "Dunn's helper during the cabinet installation process."

Dunn's duties at the Lynchburg job site included hardware and cabinet installation. He was also responsible for completing a "punch list" when the installation work was finished. George and Boswell created the "punch list" with tasks for Dunn to complete and advised Dunn if he needed to fix or redo any of his assigned tasks. Dunn also asked them questions if he needed clarification on his assigned tasks. In addition, George set deadlines for Dunn to complete his tasks, and Dunn would need approval from George before "making changes to the

---

[1] There were other subcontractors performing work on the job site as well, all of whom Cityscape required to have a tax identification number and proof of insurance. One of the other subcontractors was Home Servicing Construction, which Cityscape hired to perform many of the same duties Dunn was hired to perform. Home Servicing Construction finished Dunn's job after his work injury.

job that [he was] doing." But Dunn "didn't have somebody standing over [him] all day telling [him] what to do, how to do it." According to George, Dunn "could have done whatever he wanted" outside the work he performed at the Lynchburg job site, and Dunn was never prohibited from doing side jobs.

At the time of the injury, Dunn was working "anywhere from forty to sixty plus" hours per week at the Lynchburg job site, pursuant to a schedule approved by George. Dunn submitted the number of hours he worked to Boswell, and Cityscape "issued [Dunn's] checks" weekly. Dunn could not recall if the checks were made out to him directly, or his business. However, according to George, Cityscape likely issued checks to Dunn's business, rather than to Dunn directly. There was no written contract between Dunn and Cityscape.

Cityscape supplied "all the materials," including "anything from caulk to glue to hardware, screws; whatever it took," as well as any lumber and drywall. Dunn used his own tools. Dunn testified that he "wouldn't really borrow anything. I used their ladder, but . . . I have all the tools. If I need something, I got no problem going out and buying it." George also could not "think of a tool specifically that we bought [Dunn]."

Dunn sustained a right hip injury on July 22, 2019, while performing construction work at Cityscape's Lynchburg job site. He filed a claim with the Workers' Compensation Commission seeking medical benefits and a closed period of temporary total disability benefits. At the evidentiary hearing, the parties stipulated that Dunn sustained a compensable injury by accident, while earning a pre-injury average weekly wage of $1,295.67. Cityscape contested Dunn's claim on the ground that he was an independent contractor, rather than an employee of Cityscape, at the time of the work accident.

The deputy commissioner held that Dunn was an independent contractor and not an employee of Cityscape. Dunn timely filed with the Commission his request for review of the

deputy commissioner's opinion. The Commission affirmed the deputy commissioner's findings, holding that Cityscape did not retain "the right to exercise sufficient control over the means and methods by which [Dunn] performed his work to make him an employee." This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

What constitutes an employee under the Workers' Compensation Act is a question of law. *Creative Designs Tattooing Assocs. v. Est. of Parrish*, 56 Va. App. 299, 307 (2010). But whether the facts bring a person within the definition of an employee is a question of fact. *Dillon Constr. & Accident Fund Ins. Co. of Am. v. Carter*, 55 Va. App. 426, 430 (2009). The facts underlying the Commission's determination are binding on this Court if credible evidence supports them. *See Staton v. Bros. Signal Co.*, 66 Va. App. 185, 194-95 (2016).

### B. *The Commission did not err by determining Dunn was an independent contractor because Cityscape did not exercise sufficient control over Dunn to render him an employee.*

On appeal, Dunn assigns error to the Commission's finding that he was an independent contractor because Cityscape did not exercise sufficient control over him to render him an employee. We disagree.

No "hard and fast rule" exists for determining whether a person is an employee of a company rather than an independent contractor. *Creative Designs Tattooing Assocs.*, 56 Va. App. at 308 (quoting *Hann v. Times-Dispatch Pub. Co.*, 166 Va. 102, 105-06 (1936)). Four criteria are generally reviewed when a court is asked to determine whether a person is an "employee" under the Act: "'(1) [s]election and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action.'" *Dillon Constr.*, 55 Va. App. at 430 (quoting *Crowder v. Haymaker*, 164 Va. 77, 79 (1935)). Virginia

- 4 -

courts have held previously that "[t]he potential power of control, not the actual exercise of control, is the important element." *Id.* at 431 (quoting *Va. Emp. Comm'n v. A.I.M. Corp.*, 225 Va. 338, 347 (1983)).

The right of control includes not only the power to specify the result to be attained, but also the power to control "the means and methods by which the result is to be accomplished." *Id.* (quoting *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 98 (1982)). "An employer/employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work." *Id.* (quoting *Intermodal Servs., Inc. v. Smith*, 234 Va. 596, 601 (1988)). "If the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor." *Id.* (quoting *A.I.M. Corp.*, 225 Va. at 347). "The extent of the reserved right of control may be determined by examining the performance of the parties in the activity under scrutiny." *Id.* (quoting *Intermodal Servs., Inc.*, 234 Va. at 601). This Court examines the nature of the work to determine on a case-by-case basis whether the employer possessed the requisite degree of control for the claimant to qualify as an employee. *See Purvis v. Porter Cabs, Inc.*, 38 Va. App. 760, 770 (2002).

We disagree with Dunn's contention that Cityscape retained the right to exercise sufficient control over the means and methods of Dunn's work to render Dunn their employee. The evidence reflected that Cityscape did not closely supervise Dunn. As the Commission found, George and Boswell "coordinated the entire project and oversaw [Dunn's] work, but neither of them dictated the means and methods by which [Dunn] accomplished the tasks assigned to him." While Dunn's supervisors checked behind Dunn's work to ensure it met Cityscape's standards, Dunn did not require instruction regarding how to complete his job duties.

Moreover, while the evidence suggests that Cityscape supplied Dunn with certain materials necessary to perform his duties, Dunn supplied his own tools. Along with the tools he already owned, Dunn had "no problem going out and buying [more tools]" on his own if necessary. In fact, George could not "think of a tool specifically that we bought [Dunn]." Dunn also held himself out to the public as a business owner performing the same work independently as the work he did for Cityscape. In 2008, Dunn started his business, specializing in cabinet and hardware installation, woodworking, and trim, which is the same work he was asked to perform at Cityscape's Lynchburg job site and on other previous Cityscape jobs. Dunn's business had a tax identification number, workers' compensation insurance, a business license, business cards, and an online presence. Dunn's vehicle was also licensed and insured under his business. At no point did Cityscape restrict Dunn (or his business) from working on other jobs outside the Lynchburg job site. There were also other subcontractors at Cityscape's Lynchburg job site, including Home Servicing Construction, which Cityscape hired to perform many of the same duties that Dunn was hired to perform.

Dunn cites several factors in support of his argument that he was an employee, including that he was paid an hourly wage, that Boswell dictated when he worked, and that he had to submit his hours to Boswell to get paid. Notwithstanding Dunn's arguments, we find that the Commission properly weighed the totality of the evidence and correctly found that the evidence was sufficient to support a finding that Cityscape did not retain the right to control the method and means of the work Dunn performed. Thus, we hold that the Commission did not err in finding that Dunn was an independent contractor.

III. CONCLUSION

For the foregoing reasons, we affirm the decision of the Commission.

*Affirmed.*